UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x
                                          :
LESTER ROBINSON, TANYA FOGLE, DONNA       :
WILSON, and JACQUELINE WILSON,            :
                                          :
                                          :
              Plaintiffs,                 :
                                          : 10 Civ. 2163(BSJ)(HBP)
      v.                                  :
                                          : **Opinion and Order**
CITY OF NEW YORK, ADMINSITRATION          :
FOR CHILDREN'S SERVICES, DISTRICT         :
COUNCIL 37 (AFSCME, AFL-CIO) and          :
SOCIAL SERVICE EMPLOYEE'S UNION           :
LOCAL 371 (AFSCME, AFL-CIO),              :
                                          :
              Defendants.                 :
                                          :
------------------------------------------x

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Thirteen plaintiffs[1], all former ACS employees who were laid off in July 2008, brought this lawsuit on March 11, 2010, against the City of New York ("City"), the Administration for Children's Services ("ACS"), District Council 37 ("DC 37"), and Social Service Employees' Union Local 371 ("Local 371"), alleging their employment was terminated for discriminatory reasons based on their race, age, and/or disability in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e, et seq.), 42 U.S.C §§ 1981, 1983, and 1985, the Age Discrimination in Employment Act of 1967 (29 U.S.C. §§ 621, et

---

[1] The Court dismissed the Complaint with respect to nine original plaintiffs on December 5, 2011. (Dkt. 54.) Of the four remaining Plaintiffs, only Plaintiff Robinson is represented by counsel. Plaintiffs Tanya Fogle, Donna Wilson, and Jacqueline Wilson are proceeding pro se ("Pro Se Plaintiffs").

seq.), the Americans with Disabilities Act (42 U.S.C. §§ 12101, et seq.)[2], the New York State Human Rights Law, Executive Law, Article 15, § 296, and New York City Administrative Code Section 8-101 et seq. Defendants have moved for summary judgment on all claims.[3] For the reasons stated below, Defendants' motions for summary judgment are GRANTED.

## BACKGROUND

Defendants' submissions set forth the following relevant facts.[4] All four remaining Plaintiffs are over 40 years of age and African American. (City Defs. R. 56.1 Statement, ¶ 5.) In 2001, the City Defendants and the Union Defendants entered into a Memorandum of Understanding, which established a new competitive civil service title labeled Congregate Care Specialist ("CCS"). (City Defs. R. 56.1 Statement, ¶ 6.) The new title replaced the noncompetitive titles of Houseparent and Senior Houseparent, which were eliminated as a result of the

---

[2] Charles Schweitzer was the only plaintiff who asserted a claim for discrimination based on disability, and the Court dismissed his claim for failure to prosecute on December 5, 2011. (Dkt. 54.) Because none of the remaining Plaintiffs claims he or she was discriminated on the basis of his or her disability, the ADA claim is dismissed.

[3] The City and ACS (together, "City Defendants") filed a joint motion for summary judgment. (Dkt. 70.) DC 37 and Local 371 each filed separate motions for summary judgment, (Dkt. 64, 94), and will be referenced together as the "Union Defendants."

[4] None of the Plaintiffs submitted responses to Defendants' Local Rule 56.1 statements of fact. Plaintiff Robinson submitted a "Counterstatement of Facts" (Dkt. 106) but failed to address the facts asserted by Defendants. As a result of this failure, the Court will adopt all facts asserted in Defendants' R. 56.1 Statements, as long as they are supported by admissible evidence. See Local R. Civ. Proc. 56.1(c); T.Y. v. N.Y. City Dep't of Educ., 584 F.3d 412, 417-18 (2d Cir. 2009). The Court will cite principally to City Defendants' R. 56.1 Statement, and will refer to DC 37's and Local 371's R. 56.1 Statements only where necessary.

2

same agreement. (City Defs. R. 56.1 Statement, ¶ 6.) As a former Houseparent or Senior Houseparent, each Plaintiff became a provisional appointee under the title of CCS. (City Defs. R. 56.1 Statement, ¶ 7.)

A provisional employee may become a permanent employee if (1) he or she takes and passes a civil service examination, and (2) is selected from a civil service list of eligible employees. N.Y. Civ. Serv. Law §§ 50(1), 61(1). The last civil service test for the CCS position was given by the New York Department of Citywide Administrative Services ("DCAS") on January 26, 2002. (DC 37 R. 56.1 Statement, ¶ 21.) DCAS issued an eligible list based on the results of that exam. (DC 37 R. 56.1 Statement, ¶ 21.)

Plaintiff Fogle began as an ACS employee in or around 1988 and held the noncompetitive title of Houseparent. (City Defs. R. 56.1 Statement, ¶ 9.) She was provisionally appointed to the title of CCS in or around 2000. (City Defs. R. 56.1 Statement, ¶ 9.)

Plaintiff Robinson began his employment with ACS as a Houseparent, in or around 1986, and was provisionally appointed to the CCS title in or around 2000. (City Defs. R. 56.1 Statement, ¶ 12.)

Plaintiff Donna Wilson began as an ACS employee in or around 1987 and held the noncompetitive title of Houseparent.

3

(City Defs. R. 56.1 Statement, ¶ 10.)  She was provisionally appointed to the CCS title in or around 2000.  (City Defs. R. 56.1 Statement, ¶ 10.)

Plaintiff Jacqueline Wilson began as a Houseparent in 1998 and was provisionally appointed to the CCS title in or around 2002.  (City Defs. R. 56.1 Statement, ¶ 11.)

All of the Plaintiffs took the civil service exam for the CCS position in 2002.  (City Defs. R. 56.1 Statement, ¶¶ 9-12.)  Only Plaintiffs Robinson and Jacqueline Wilson passed the test; however, they were not appointed off the eligible list.  (City Defs. R. 56.1 Statement, ¶ 13.)

Beginning in 2006, ACS had begun to close its congregate care facilities as a result of budgetary constraints, which reduced the need for CCSs.  (City Defs. R. 56.1 Statement, ¶ 15; DC 37 R. 56.1 Statement, ¶ 26.)  At that time, Local 371 was able to negotiate with the City to save Plaintiffs' jobs.  (Local 371 R. 56.1 Statement, ¶ 11.)

On March 4, 2008, ACS received instructions from the City's Office of Management and Budget ("OMB") to reduce its budget for the 2009 fiscal year by $23,732,000.00 ("OMB Memo").  (City Defs. R. 56.1 Statement, ¶ 14.)  The OMB Memo suggested that one way to achieve the targeted budget reduction was a "reduction in personal service costs."  (City Defs. R. 56.1 Statement, ¶ 14.)  Following receipt of the OMB Memo, ACS developed a plan to meet

4

the targeted budget reduction, which included eliminating the CCS title, as ACS had stopped running a direct congregate care program. (City Defs. R. 56.1 Statement, ¶ 15.)

DCAS has established a multi-step layoff process which ACS was required to follow and did follow. (City Defs. R. 56.1 Statement, ¶ 16.) Pursuant to the DCAS process, all provisional appointees must be laid off, regardless of seniority, before any permanent competitive or noncompetitive employee can be terminated. (City Defs. R. 56.1 Statement, ¶ 18.)

In June 2008, ACS informed Plaintiffs in writing of the impending layoffs. (City Defs. R. 56.1 Statement, ¶ 21.) On or about July 11, 2008, ACS sent to each affected employee, including Plaintiffs, a letter explaining that, due to budgetary cutbacks, they would be terminated effective July 25, 2008. (City Defs. R. 56.1 Statement, ¶ 22.) Some CCS employees were able to fill other positions at ACS, and other CCS employees moved to the Department of Juvenile Justices where the CCS title is also utilized. (Local 371 R. 56.1 Statement, ¶ 15.) Such alternatives to termination were not available to every laid off employee. (Local 371 R. 56.1 Statement, ¶ 15.)

In October 2008, Plaintiffs filed discrimination charges with the New York State Division of Human Rights and the Equal Employment Opportunity Commission ("EEOC"). (City Defs. R. 56.1 Statement, ¶ 24.) The EEOC issued "Right to Sue" letters to

each Plaintiff by letter dated December 2, 2009. (City Defs. R. 56.1 Statement, ¶ 25.)

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). The moving party bears the burden of showing the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). However, the nonmoving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986). The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Id.</u> at 248. In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). Summary judgment is inappropriate where "the evidence is susceptible of different interpretations or

inferences by the trier of fact." Hunt v. Cromartie, 526 U.S. 541, 553 (1999) (citation omitted).

In assessing a claim for employment discrimination under either Title VII or the ADEA, a court must apply the "burden-shifting" formula prescribed in McDonnell Douglas Corporation v. Green, 411 U.S. 792, 802-04 (1973). Under this framework, a plaintiff must first establish a prima facie case of discrimination by showing that (1) he belonged to a protected class at the relevant time, (2) he was performing his job in a satisfactory manner, (3) he suffered an adverse employment action, and (4) such action took place under circumstances giving rise to an inference of discrimination. See McDonnell Douglas, 411 U.S. at 802. If the plaintiff successfully establishes a prima facie case, the burden shifts to the employer to articulate a legitimate and non-discriminatory reason for its actions. Id. If the employer meets its burden of production, the burden of persuasion shifts back to the plaintiff to demonstrate that the employer's proffered non-discriminatory reason was merely pretextual. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000). At this point in the analysis, the presumption of discrimination created by the initial prima facie showing drops out, and the plaintiff must prove both that the employer's proffered justification was false, and that the actual reason for the

7

challenged employment action was impermissible discrimination. See Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 93 (2d Cir. 2001), cert. denied, 534 U.S. 951 (2001).

In employment discrimination cases, "trial courts must be especially chary in handing out summary judgment" because the employer's intent is ordinarily at issue. Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 87 (2d Cir. 1996), cert. denied 121 S. Ct. 1191 (2001). However, "this caution does not absolve the plaintiff from the responsibility of producing sufficient evidence from which a reasonable jury could return a verdict in his favor." LaLanne v. Begin Managed Programs, No. 04 Civ. 9076(NRB), 2007 WL 2154190, at *3 (S.D.N.Y. July 24, 2007), aff'd, 346 F. App'x 666 (2d Cir. 2009) (citing Anderson, 477 U.S. at 249-50; Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 461 (2d Cir. 2001), cert. denied 122 S. Ct. 460 (2001)).

## DISCUSSION

Defendants argue that Plaintiffs have failed to establish a prima facie claim for discrimination because they have not provided facts sufficient to raise an inference of discrimination. (City Defs.' Mem. in Support of Mot. for Summary Judgment, Apr. 27, 2012, 6 ("City Defs.' Mem.").) However, Defendants contend that even if Plaintiffs have successfully made a prima facie showing, Defendants have articulated a legitimate and non-discriminatory reason for the

8

layoffs, and that Plaintiffs have submitted no admissible evidence that creates a factual issue related to whether the Defendants' proffered reason for the layoffs was pretextual. (City Defs.' Mem. at 17.)

As outlined above, Defendants have submitted admissible evidence to show that the City eliminated Plaintiffs' CCS positions as part of a budgetary reduction it was ordered to make by OMB. A mandate to make budgetary cuts is a legitimate and non-discriminatory reason to terminate an individual's employment. LaLanne, 2007 WL 2154190, at *6 ("Given that budgetary considerations and other business-related decisions are non-retaliatory, legitimate bases for terminating an employee . . . this explanation is more than sufficient to satisfy the second part of the McDonnell Douglas framework.") (internal citation omitted).

The Court now considers "whether Plaintiff[s] ha[ve] presented sufficient evidence from which a reasonable trier of fact could determine that [D]efendants discriminated against [them]." Goldman v. Administration for Children's Servs., No. 04 Civ. 7890(GEL), 2007 WL 1552397, at *5 (S.D.N.Y. May 29, 2007). In short, the answer is no. Plaintiffs have offered

9

only evidence that is either inadmissible or simply does not controvert Defendants' asserted facts.[5]

In an attempt to show pretext, Plaintiffs appear to argue that, after they were laid off, the City posted job openings for positions that appeared to have the same tasks and standards as their CCS job title. (Robinson Mem. in Opp. to Defs.' Mots. for Summary Judgment, Aug. 15, 2012, 9 ("Robinson Opp. Mem."); Fogle Aff. in Opp. to Defs.' Mots. for Summary Judgment, June 21, 2012, ¶ 3 ("Fogle Aff.")[6].) Plaintiffs attach an ACS form titled "Tasks and Standards Form" that appears to be used in evaluating employees performing the job of Children's Counselor in 2011-2012. (Riley Decl. in Support of Robinson Opp. Mem., Aug. 15, 2012, Ex. 18 ("Riley Decl."); Fogle Aff., Ex. D.) Plaintiffs never provided this form to Defendants in discovery, and it is therefore precluded under Federal Rule 26(a).

Even if the Tasks and Standards Form were admissible, it shows only that in 2011-2012 an ACS employee in a different civil service title than Plaintiffs' performed some of the tasks Plaintiffs had performed under the CCS title. The form does not indicate in what program this particular employee worked. None of the Plaintiffs disputes the fact that "[t]he CCS title was

---

[5] The Court will consider all of Plaintiffs' arguments together and will differentiate between Plaintiff Robinson and the Pro Se Plaintiffs only where necessary.

[6] Because the Pro Se Plaintiffs have submitted virtually identical affidavits, the Court will refer only to Plaintiff Fogle's Affidavit (Dkt. 88) unless citation to the others is required.

10

specifically identified for layoffs because ACS had ended its practice of providing direct congregate care services[.]" (City Defs.' Reply Mem. in Support of Mot. for Summary Judgment, July 5, 2012, 4-5.) The mere existence, in 2011-2012, of a job encompassing some of the same tasks that Plaintiffs performed in the congregate care program prior to the 2008 layoffs does not rebut Defendant's well-supported position that, as a result of the budgetary cutbacks, Plaintiffs' title was eliminated and the particular services provided by those in that title, as part of the congregate care program, were no longer necessary.

Plaintiffs also attach a newspaper article dated October 17, 2008, reporting new ACS job openings, as well as several bulletin postings of newly available ACS positions from 2007, 2008, and 2012. (Riley Decl., Exs. 12-16; Fogle Aff., Ex. B.) The newspaper article is hearsay and therefore inadmissible. While the job listings are admissible, they do not add any support to Plaintiffs' argument because the fact that ACS posted job openings for different titles and in different programs from Plaintiffs' former job has no bearing on whether Defendants' articulated motivation for firing Plaintiffs was pretext.

Notably, there are no facts suggesting that Plaintiffs were in any way prevented from applying to the new positions after they were fired, or that they applied and were rejected. Plaintiff Robinson concedes that the job fair organized by the

11

City "g[ave] laid off workers an opportunity to apply for vacancies in other City agencies[.]" (Robinson Counterstatement, Aug. 15, 2012, ¶ 9.) He also admitted at his deposition that he was not qualified for the child protective specialist position, a position he lumps together with the child care counselor position in his written submissions. (Mulligan Decl. in Support of City Defs.' Mot. for Summary Judgment, Apr. 27, 2012, Ex. G at 76-77 ("Mulligan Decl."); Robinson Opp. Mem. at 12.)

Plaintiffs also appear to argue that individuals recently performing the child care counselor job are all junior to Plaintiffs. Plaintiffs attach three "Child Care Counselors Monthly Postings," dated March 3, 2012. These documents contain a list of employees and next to some of the names is a handwritten checkmark. At the bottom of each list are a handwritten checkmark and the words "On job less than 10 years" or "Less than 10 years on job." (Riley Decl., Exs. 19-20; Fogle Aff., Ex. C.) The monthly postings are not competent evidence because, inter alia, the documents are not authenticated; the handwritten comments are hearsay, and there is no evidence provided to give the documents any context. Even if the monthly postings were admissible, however, they themselves do not place in dispute any facts relevant to whether Defendants made adverse employment decisions based on discriminatory reasons.

12

Plaintiffs attempt to create an issue of fact about the propriety of their terminations by asserting that they were not provisional employees in 2008. (Robinson Opp. Mem. at 13-15; Fogle Aff., ¶¶ 7-12.) The Pro Se Plaintiffs contend that they were all annualized employees who were laid off in violation of ACS policy, and they have submitted documentation in an effort to establish their annualized worker status. (See Fogle Aff., Exs. E, F; J. Wilson Aff. in Opp. to Defs.' Mots. for Summary Judgment, June 20, 2012, Exs. E, F; D. Wilson Aff. in Opp. to Defs.' Mots. for Summary Judgment, June 20, 2012, Exs. E, F.) However, the Pro Se Plaintiffs' exhibits all pre-date the Memorandum of Understanding signed by Defendants in 2001, which extinguished the Houseparent and Senior Houseparent titles and provisionally appointed Plaintiffs under the CCS title. The Pro Se Plaintiffs have offered no evidence that disputes their status as provisional appointees in 2008. Moreover, each of the Pro Se Plaintiffs has acknowledged that she was in a competitive position as of 2002, and that such a position requires taking and passing a civil service exam in order to become a permanent employee. (Mulligan Decl., Ex. D at 41, 55-56; Ex. E. at 83-84; Ex. F at 36; see also Complaint ¶¶ 32-33.)

Plaintiff Robinson submitted similar pre-2001 documentation to contest his status as a provisional employee. (Riley Decl., Ex. 7.) He argues in addition that because he was given a type

13

of paid sick leave that is available only to permanent employees, he was not a provisional employee. (Robinson Opp. Mem. at 14.) The Court cannot discern from Plaintiff's exhibits whether he was in fact granted a form of sick leave available only to permanent employees. Nonetheless, it is clear from the ACS Time and Leave Rules and Regulations that ACS retains a substantial amount of discretion in determining its employees' sick leave. (Riley Decl., Ex. 6 at 13-14.) That Plaintiff Robinson may have received more sick leave than is ordinarily granted to a provisional employee does not controvert Defendants' well-documented assertion that he was in fact a provisional employee in 2008. (See Mulligan Decl., Ex. B; Wynter Decl. in Support of City Defs.' Mot. for Summary Judgment, Apr. 27, 2012, ¶ 5.)

The other documents submitted by Plaintiffs consist primarily of news articles and press releases, which are not admissible to prove the truth of the statements therein and which the Court finds lack any persuasive value. The Court also finds that those exhibits which may be admissible but have not been addressed by the Court do not create a dispute about a fact that is material to Plaintiffs' claims. Plaintiffs have simply offered no proof to support a finding that they suffered from any adverse employment decisions based on improper

discriminatory reasons. For this reason, the Complaint must be dismissed against all Defendants.

Because the Court finds that Plaintiffs' claims fail substantively, it declines to address Defendants' various procedural bases for dismissal.

## CONCLUSION

For the foregoing reasons, Defendants' motions for summary judgment are GRANTED. The Clerk of the Court is directed to terminate the motions (Dkt. 64, 70, 94), and to close this case.

**SO ORDERED:**

_____
BARBARA S. JONES
UNITED STATES DISTRICT JUDGE

Dated:   New York, New York
         December 3, 2012